UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

FRED HEWITT,

                       Petitioner,

      - against -

CHRISTOPHER ARTUZ, Superintendent,
Green Haven Correctional Facility,

                       Defendant.
----------------------------------------------------------------x

Civil Action No.
CV-99-5021 (DGT)

ORDER

TRAGER, J.

Petitioner files this pro se petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2000), to vacate his conviction for murder, kidnapping, manslaughter, and tampering with physical evidence. For the following reasons, his petition is denied.

**Background**

**(1)**

Petitioner was tried at a jury trial in New York State Supreme Court, Queens County. The State introduced the following evidence. On August 5, 1994, after a struggle, petitioner strangled Ernesto Clinton to death with an extension cord, wrapped his body in a blanket and deposited it in a trash compactor chute. Trial Tr. 736. His girlfriend, Joyce Frazer, in whose apartment the murder took place, saw petitioner carry the body wrapped in the blanket out of her apartment. Id. at

576-77. Soon after the murder, petitioner fled to Atlanta under the alias "Paul Hall" and was jailed there for an unrelated offense. Id. at 724-25, 737, 807-16.

Operating on a tip that petitioner may be in the Atlanta area using the name Paul Hall, an Atlanta police detective, William Smart, visited petitioner at a pretrial detention center in Atlanta and elicited incriminating statements from petitioner without giving him Miranda warnings. Id. at 815. According to Smart, when petitioner told him he was from New York, Smart said, "Yes, I know that," further stating, "And besides that, your name is not Paul Hall. It's Fred Hewitt." Id. at 813:18-20. Petitioner was visibly startled by that statement but insisted that his name was Paul Hall even though Smart persisted, saying, "I know what the real deal is. I know who you are." Id. at 813:20-814:5, 12-13. Only after Smart confronted petitioner with his photograph and told him that detectives from New York City were coming to Atlanta to question him, petitioner said, "Yes, that's me, but I didn't have nothing to do with no murder." Id. at 815:7-8.

While in Atlanta, petitioner also gave a statement to John Gillen, the New York City police detective who had tracked him there. Before taking petitioner's statement, Gillen read him a Miranda warning form, which petitioner signed. Id. at 726-31. Gillen then memorialized the statement, and petitioner signed it.

2

Id. at 734-37.

At trial, Frazer testified on cross-examination that petitioner kept clothes, a dresser, and other "items" at her apartment. Id. at 597. On redirect, the State elicited testimony from Frazer over defense objections that two of the items petitioner stored at her apartment were a crossbow and a bulletproof vest. Id. at 656. The court overruled the objections. Id. Later in the trial, again over defense objection, Gillen testified that he had seized from Frazer's apartment, inter alia, a crossbow and a bulletproof vest. Id. at 717. Defense counsel asked for a sidebar conference at which he elaborated on his objection, arguing that the testimony was irrelevant character evidence tending to show petitioner's propensity for violence. Id. at 718. According to the State, the defense opened the door on cross-examination when it raised petitioner's habit of storing his belongings at Frazer's apartment. Id. As a result of the sidebar, the court precluded any further testimony about the crossbow or bulletproof vest. Id. at 720:16-17. The court declined petitioner's request to strike all previous references to petitioner's crossbow and bulletproof vest from the record. Id. at 718:14-15, 720:19-21.

Additionally, Detective Smart testified about the conversation he had with petitioner at the pretrial detention center in Atlanta. Petitioner moved to suppress the admissions

because they were elicited without <u>Miranda</u> warnings.  The trial court held that <u>Miranda</u> warnings were not required since Smart did not question petitioner or otherwise trigger his remarks about the murder.  Rather, according to the court, petitioner volunteered the information.  <u>See</u> Br. for Appellant-Def. 10; App. Br. for Resp. 13.[1]

After the parties' summations, petitioner requested that the court instruct the jury on justification and on intoxication. Trial Tr. 999-1002.  Although the court instructed the jury on justification with respect to intentional murder and manslaughter, it did not do so with respect to kidnapping and felony murder.  <u>Id.</u> at 1203-4.  Similarly, the court instructed the jury on the effect of intoxication on the element of intent in its discussion of intentional murder, but not in its discussion on manslaughter, a lesser included charge.  <u>Id.</u> at 1197-1203.

(2)

At the conclusion of the trial, petitioner was convicted of second degree murder, kidnapping, manslaughter and tampering with physical evidence.  On May 27, 1997, he was sentenced to concurrent prison terms, the longest of which was from 25 years

---

[1] Later admissions petitioner made to Smart were suppressed at trial because the court found that they were elicited through interrogation.

4

to life imprisonment.

Petitioner appealed, raising four issues: 1) the trial court erred in allowing statements petitioner made to police in violation of his Fifth Amendment and Sixth Amendment rights, 2) petitioner was deprived of due process when the trial court overturned his jury challenge, 3) the trial court erred in admitting irrelevant character evidence in the form of testimony establishing his ownership of a crossbow and bulletproof vest and 4) the trial court erred in refusing to make certain jury instructions.  Br. for Def.-Appellant 31, 45, 54, 59.  In its response, the State conceded that the testimony regarding the crossbow and the bulletproof vest was irrelevant.  Br. & Ex. for Resp't 53.  However, the State maintained that the error was harmless.  Id.

On February 16, 1999, the Appellate Division, Second Department, affirmed the court.  People v. Hewitt, 685 N.Y.S.2d 745, 746, 258 A.D.2d 597, 599 (2d Dep't 1999).  Although the Appellate Division addressed the three other issues, it did not discuss petitioner's challenge to the introduction of the character evidence.  Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (defining interrogation as "not only . . . express questioning, but also . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect") and

5

Miranda v. Arizona, 384 U.S. 436 (1966), the Appellate Division first held that the statements petitioner made to Smart were not elicited through interrogation and, thus, were properly admitted. Hewitt, 685 N.Y.S.2d at 745-46. Next, it affirmed the trial court's decision that petitioner's challenge of a juror was pretextual. Id. at 746. The court then discussed the jury instructions. The court held that the trial court erred in failing to give a justification instruction as to kidnapping and felony murder and an intoxication instruction as to manslaughter. Id. However, the error was harmless. Id. The court found that the jury had clearly rejected justification and intoxication since it had found petitioner guilty of other crimes as to which the trial court charged those defenses. Id.

Regarding the character evidence, the court merely stated: "The defendant's remaining contentions are without merit." Id. The Court of Appeals denied petitioner's petition for leave to appeal on May 7, 1999. People v. Hewitt, 93 N.Y.2d 925, 715 N.E.2d 512, 693 N.Y.S.2d 509 (1999).

On August 23, 1999, petitioner filed a pro se petition for a writ of habeas corpus seeking relief on ineffective assistance of counsel and due process grounds. Particularly, petitioner claimed: 1) he was denied the effective assistance of counsel at trial when his attorney failed to timely move for lesser included counts, 2) he was denied his rights of due process and to a fair

trial when the court allowed the State to "introduce prejudicial matters to inflame the jury against petitioner by suggesting that he was predisposed to do crime by [possessing] a crossbow and bullet proof vest," 3) he was denied the effective assistance of counsel on appeal when his appellate attorney failed to raise the ineffectiveness of the trial attorney, and 4) he was denied his rights of due process and to a fair trial "through the cumulative errors at trial now complained and previously presented to the state courts."  Pet. 5-6.

The state filed a memorandum of law in opposition to the petition arguing for dismissal.  According to the State, dismissal was warranted under Rose v. Lundy, 455 U.S. 509 (1982), because petitioner had not exhausted his claims of ineffectiveness of counsel.  Aff. and Mem. in Opp'n 10-17.  Additionally, the State argued that petitioner's claims attacking the trial court's admission of testimony regarding the crossbow and bulletproof vest did not present a federal constitutional question.  Id. at 17-23.

On November 20, 2001, petitioner was given 30 days to notify the Court whether he would attempt to exhaust his ineffective assistance of counsel claims, and on November 27, 2001, petitioner requested that his petition be held in abeyance for that purpose.  Letter from Fred Hewitt to the Court (Dec. 22, 2001).  Although petitioner was granted two months to do so, he

did not file a motion in state court.

Instead, in an amended petition dated January 23, 2002, petitioner withdrew grounds one, three and four of his habeas petition. Am. Pet. 2. (Ground two -- attacking the introduction of evidence that petitioner owned a crossbow and a bulletproof vest -- remains extant.) Petitioner also added three new grounds for relief, all of which were raised on his direct appeal: 1) the trial court failed to suppress statements petitioner made to the police; 2) the trial court deprived petitioner of "due process, equal protection and a fair trial, when the Court found pretextual his challenge of a juror based on his crime victim status"; and 3) the trial court erred when it declined to instruct the jury that "(A) the justification defense charged as to the intentional murder also applied to kidnapping and felony murder[,] (B) [i]ntoxication, charged with respect to all the other intentional offenses, could also negate the intent element of first-degree manslaughter, and (C) the indictment had no evidentiary value." Id.

The State filed a motion to dismiss petitioner's amended petition, arguing that the three new claims were untimely. According to the State, petitioner filed the new claims after the one-year period of limitations prescribed by statute. Mem. of

Law in Supp. of Mot. to Dismiss 15-16.[2] Additionally, the State maintained that the "relation back" doctrine did not save the new claims because the new claims did not, in fact, relate back to the original petition. Id. at 23-26.

Despite several letters asking his petition be stayed, petitioner did not respond to the State's motion to dismiss or move to cure the petition's unexhausted claims.[3]

## Discussion

### (1)

### Standard of Review

Under AEDPA, federal courts apply a deferential standard of review when reviewing a habeas corpus petition by a prisoner challenging a state court conviction that was adjudicated on the merits. 28 U.S.C. § 2254(d). Where petitioner's claim has been adjudicated on the merits in state court, habeas relief will be available only if petitioner can show that the state court decision: 1) was "contrary to, or involved an unreasonable

---

[2] Because petitioner did not file any motions in state court after the appellate court affirmed his conviction, the period of limitations was not tolled. Mot. to Dismiss 17-22.

[3] In a letter filed February 3, 2006, four years after the State filed its motion to dismiss, petitioner reasserted his claims that he was prejudiced by the admission of evidence that he owned a crossbow and bulletproof vest and that his attorney improperly excluded black jurors from the venire pool. Letter from Fred Hewitt to the Court (Feb. 3, 2006).

9

application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or 2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is one that "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotation marks omitted). The Second Circuit gives a "broad reading" to state court adjudications. Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002). Thus, the adjudication requirement is satisfied when the state court states: "Defendant's remaining contentions are without merit." See id.

A state court adjudication is "contrary to" clearly established federal law either if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the claim differently than the Supreme Court has on a case with materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision involved an "unreasonable application" of federal law if it "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. The Court stressed that the state court must have applied the law "unreasonabl[y]," not

merely "erroneously or incorrectly." Id. at 411.

Determination of factual issues made by a state court "shall be presumed to be correct," and petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Thus, this Court must defer to the Appellate Division's decision that the trial court did not err in admitting petitioner's statements to police and character evidence or in denying his challenge of a juror, and that the trial court's error in charging the jury was harmless unless it determines that the Appellate Division's decision involved an unreasonable application of, or was contrary to, clearly established federal law as determined by the United States Supreme Court.

**(2)**

**Relation Back**

AEDPA sets a one-year statute of limitations in which a petitioner may seek habeas corpus relief from a state court judgement. 28 U.S.C. § 2244(d). The limitation period begins when the state-court judgment becomes final. 28 U.S.C. § 2244(d)(1)(A). Petitioner's judgment of conviction became final on August 12, 1999, when the time for petitioner to file a petition for certiorari in the United States Supreme Court expired. See Williams v. Artuz, 237 F.3d 147, 151 (2001); see

also <u>Clay v. U.S.</u>, 537 U.S. 522 (2003) (holding that a judgment of conviction in federal court becomes final for purposes of calculating the one-year limitation period when time expires for filing a petition for certiorari in the United States Supreme Court). Therefore, the period in which petitioner could file a petition ended on August 12, 2000. Petitioner filed his first petition well within the limitation period, on August 23, 1999. However, his amended petition was filed soon after January 23, 2002, well after the limitation period had ended.

The Federal Rules of Civil Procedure control amendments to a habeas corpus petition. Fed. R. Civ. P. 81(a)(4); 28 U.S.C. § 2242; Rules Governing § 2254 Cases, Rule 11. Any claims raised for the first time in an amended petition filed outside the limitation period must relate back to the original petition to be timely under Rule 15 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(c). An amendment relates back when the new claim "arose out of the conduct, transaction, or occurrence" of a claim found in the original petition. Fed. R. Civ. P. 15(c)(1)(B). In construing the meaning of the phrase "conduct, transaction, or occurrence," the Supreme Court in <u>Mayle v. Felix</u> held: "Relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted

claims." 545 U.S. 644, 659 (2005) (citation omitted).[4]  In that case the Supreme Court rejected a habeas petitioner's assertion that his Confrontation Clause claim challenging videotaped testimony and his later Fifth Amendment claim alleging coercion were based on a single transaction or occurrence.  Id.  The Court rejected the notion held at the time in the Seventh and Ninth Circuits that a claim related back if it arose from the same trial or appeal that was the subject of the original petition.  Id. at 656-7.

None of petitioner's three new claims relate back to any claim found in the original petition because none of the facts supporting the new claims were set forth in the original petition.  Petitioner raised the following four grounds in his original petition: the trial attorney's failure to timely move for lesser included counts, the introduction of the crossbow and bulletproof vest evidence, the appellate attorney's failure to raise the ineffectiveness of the trial attorney on appeal, and the claim of prejudice by "cumulative errors."  However, in his amended petition he alleged errors relating to the introduction of statements he made to the police, an overruled juror challenge, and the court's jury instructions.  The claims from the original petition and those from the amended petition are

---

[4]The Court construed the language of Rule 15(c)(2) as it then existed.  Since the rule's amendment in 2007, that language can now be found in Rule 15(c)(1)(B).

13

patently not "tied to a common core of operative facts."  Mayle, 545 U.S. at 664.

Moreover, even were the new claims to be deemed timely by the relation back doctrine, the petition would not be granted. The state court's decisions to admit petitioner's statements to police, to overturn his challenge of a juror, and to charge the jury as it did were not in error or contrary to, or did not involve unreasonable applications of, federal law.

Accordingly, the claims advanced by the amended petition are denied.

(3)

**Evidence of Possession of a Crossbow and Bulletproof Vest**

Since petitioner withdrew all other grounds for relief in his habeas petition, the only remaining claim before the Court is Ground Two.  In Ground Two, petitioner claims that he was denied due process and the right to a fair trial when the trial court allowed the State to introduce irrelevant character evidence in the form of testimony that he possessed a crossbow and a bulletproof vest.

At trial, Frazer testified that petitioner kept a crossbow and bulletproof vest at her apartment.  Detective Gillen also testified about the existence of a crossbow and bulletproof vest at Frazer's apartment.  On appeal, the State conceded that

admission of this evidence was error, though harmless. Br. & Ex. for Resp't 53. However, the appellate court, although not directly addressing the issue, found that petitioner's challenge was without merit on appeal. Hewitt, 685 N.Y.S.2d at 746.

"[A] federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002). Trial courts' erroneous evidentiary rulings do not necessarily "rise to the level of constitutional error." Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988). However, in criminal trials, state courts are bound by federal guarantees of due process "to observe that fundamental fairness essential to the very concept of justice." Lisenba v. California, 314 U.S. 219, 236 (1941). Therefore, a state court's erroneous admission of irrelevant evidence is not a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

In Dunnigan, the Second Circuit provided guidelines to evaluate whether the erroneous admission of unfairly prejudicial evidence amounts to a denial of due process. First, "[w]here the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to

15

due process." Dunnigan, 137 F.3d at 125 (quoting Estelle v. McGuire, 502 U.S. 62, 69 (1991)).  Second, the admission of evidence which is not probative of an essential element amounts to a denial of due process only if the evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)).  In evaluating whether erroneously admitted and irrelevant evidence was sufficiently material, it must be viewed "in light of the entire record before the jury."  Id. (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)).

In Dunnigan, the Court of Appeals for the Second Circuit found that two irrelevant facts elicited at trial were immaterial to petitioner's conviction because they appeared in one sentence out of 30 pages of a witness's testimony.  Id. at 126.[5]

The Appellate Division's opinion did not discuss the relevance of the testimony regarding the crossbow and bulletproof vest.  However, the State conceded that the evidence was irrelevant but emphasized the harmlessness of its introduction.

The testimony regarding the crossbow and bulletproof vest

---

[5] The court found that a third fact -- that the witness was petitioner's parole officer -- was relevant although prejudicial. Dunnigan, 137 F.3d at 126.  The court further held that the prejudice of that evidence clearly warranted a limiting instruction but that the trial court's failure to give such an instruction did not amount to a denial of due process.  Id. at 126-7.

16

was certainly not probative of an essential element of the case; it only tended to prove petitioner's propensity for violence. See id. at 125. The remaining question, then, is whether, in light of the entire record before the jury, the irrelevant character evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." See id.

Testimony about the crossbow and bulletproof vest was offered by two witnesses in the State's case-in-chief. However, the testimony was limited to one sentence per witness. After the irrelevant character evidence was allowed the second time, the trial court precluded any further reference to petitioner's crossbow or bulletproof vest. In contrast, the State presented abundant relevant evidence to prove petitioner's guilt beyond a reasonable doubt. The State introduced a statement, prepared by the police and signed by petitioner, in which petitioner admitted tying the victim with an extension cord, stripping him, struggling with him and, finally, choking him with the extension cord. Trial Tr. 734-36. The statement also contained petitioner's admission regarding his disposal of the body, which was consistent with the testimony given by Frazer at trial. Id. at 736:19-21; see id. at 576-77. Frazer also testified at trial that, when she came home after the murder, she observed what appeared to be a body wrapped in a blanket on the floor of her

17

apartment and that petitioner threatened her when she attempted to contact the police. Id. at 573-75. The wealth of evidence to support petitioner's conviction removes any doubt that the testimony regarding the crossbow and bulletproof vest was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." See Dunnigan, 137 F.3d at 125.

Viewing the irrelevant character evidence in light of the entire record, petitioner has failed to establish that its admission was so unfair that it violated fundamental conceptions of justice. Thus, the trial court's ruling remains a matter of state law not cognizable on habeas review, 28 U.S.C. § 2254(a); accord U.S. ex rel. Kassim v. Wilkins, 298 F.2d 479, 480 (2d Cir. 1962) (upholding the denial of an application for a writ of habeas corpus because the petitioner's claim that the trial court improperly admitted a knife into evidence was "outside the orbit of federal judicial cognizance"), and, thus, the Appellate Division's decision was not "contrary to" and did not involve an "unreasonable application" of federal law.

## Conclusion

Petitioner has shown no basis for relief under section 2254, and, therefore, his petition is denied. The Clerk of the Court is directed to enter judgment accordingly and close the case.

In addition, because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); Lucidore v. N.Y. Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

Dated: Brooklyn, New York
August 4, 2008

SO ORDERED:

/s/
David G. Trager
United States District Judge